UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

EDWARD SCOTT YANCEY,

     Petitioner,

v.                                    No.  22-cv-11790-DLC

WARDEN, FMC DEVENS,

     Respondent.

_____

**MEMORANDUM AND ORDER ON RESPONDENT'S MOTION FOR SUMMARY JUDGMENT**

CABELL, U.S.M.J.

## I.   INTRODUCTION

Petitioner Edward Scott Yancey ("Yancey" or "Petitioner") is currently serving a federal term of incarceration and is presently due to be released in December 2024.  He contends that the Bureau of Prisons (BOP) failed to properly credit certain periods of time he spent in presentence custody toward his federal sentence.  He contends he has completed serving his sentence and petitions the court pursuant to 28 U.S.C. § 2241 for a writ of habeas corpus effecting his immediate release.  Respondent Amy Boncher ("Respondent"), as warden of Federal Medical Center Devens (FMC Devens), moves for summary judgment, which Petitioner opposes.[1]

---

[1] Petitioner properly named the warden of FMC Devens as the respondent in his petition because he was incarcerated at FMC Devens when he filed the petition. The BOP has since transferred him to another facility in Texas. *See Yancey v. Warden, FMC Devens*, --- F. Supp. 3d ---, 2023 WL 4409852, at *1-*2 (D. Mass. 2023).

(Dkt. Nos. 22; 29).  For the reasons explained below, the court grants Respondent's motion.

## II.  <u>RELEVANT BACKGROUND</u>

### 1.  Factual History[2]

On November 5, 2008, Petitioner was arrested by Mississippi state authorities for failing to register as a sex offender ("MS Case I").  (Dkt. No. 24, Respondent's Statement of Material Facts, ¶ 6).  Mississippi released Petitioner on bond on November 7, but state officers arrested him again on November 15 for touching a child for lustful purposes ("MS Case II").  (*Id.*).  Since his second arrest, Petitioner has been in the custody of either the state or federal government.  (*Id.*).

On December 29, 2008, the federal government charged Petitioner via a criminal complaint with being a felon in possession of a firearm, in *United States v. Yancey*, 1:09-cr-00092-WJG-RHW-1 (S.D. Miss.) ("Yancey I").  (Dkt. No. 31, Petitioner's Statement of Material Facts, ¶ 4).  On January 5,

---

[2] On a motion for summary judgment, the court usually favors the factual record offered by the nonmoving party.  Here, though, Petitioner's Statement of Material Facts (Dkt. No. 31) and Supplemental Statement of Material Facts (Dkt. No. 38) both fail to cite to supporting documentation in the record as required by Local Rule 56.1.  Since only Respondent's Statement of Material Facts includes proper citations, the court will primarily cite to Respondent's Statement.  That said, this habeas petition more concerns the propriety of the BOP's methodology in calculating Petitioner's sentence than a dispute over key facts.  Nevertheless, whenever there is a genuine factual dispute, the court will interpret the record in the light most favorable to Petitioner.

2009, Mississippi state authorities transferred Petitioner to federal custody.[3]  (Dkt. No. 24, ¶ 18).

On April 6, 2009, Mississippi indicted Petitioner on both MS Case I and MS Case II.  (Dkt. No. 31, ¶ 7).  On April 14, 2009, Petitioner entered a guilty plea in his federal case, Yancey I, and on July 8, 2009, a federal court sentenced him to 16 months in prison.  (*Id.*, ¶¶ 8-9).  Federal authorities then returned Petitioner to state officials on August 17, 2009.  (Dkt. No. 24, ¶ 20).

On October 22, 2009, the federal government charged Petitioner in a new, second matter with possession of child pornography, in *United States v. Yancey*, No. 1:09-cr-00092-WJG-RHW-1 (S.D. Miss.) ("Yancey II").  (Dkt. No. 31, ¶ 11).  On November 3, 2009, Petitioner was again transferred from state custody to federal custody and pleaded guilty to the charge in Yancey II.  (*Id.;* Dkt. No. 24, ¶ 21).

On February 1, 2010, a federal court sentenced Petitioner to a term of incarceration of 180 months in connection with Yancey II, to be served consecutive to the 16-month term imposed in Yancey I.  (Dkt. No. 24, ¶ 22).  On February 4, following another guilty plea, the state court sentenced Petitioner to 14 years on his state charges, to be served concurrently with his federal sentences.

---

[3] To be clear, and as noted below, the time Petitioner spent in federal custody from January 5, 2009, to August 17, 2009, was ultimately credited to his state sentence.  (Dkt. No. 24, ¶ 26).

(Dkt. No. 31, ¶ 15).  On April 6, federal officials returned Petitioner to state custody.  (Dkt. No. 24, ¶ 25).

On November 17, 2010, the state court credited the two years Petitioner had already spent in custody toward his state sentence and then suspended the sentence's remainder.  (Dkt. No. 24, ¶ 26). This credit included all the time that Petitioner had spent in both state and federal custody.  Per the state court's order, the state kept Petitioner in custody until the state could release him to federal officials on November 18, 2010.  (Dkt. No. 24, ¶ 27).

The BOP calculated Petitioner's federal sentence to run consecutive to his state sentence.  (Dkt. No. 24, ¶ 31). Therefore, the BOP commenced Petitioner's federal sentence on November 18, 2010, the date Respondent argues Petitioner came into exclusive federal custody after state authorities relinquished primary jurisdiction over him.  (*Id.*)  The BOP credited Petitioner six days for time spent in state custody between November 11, 2010, the day the state court concluded his state sentence expired, and November 18, 2010, when the state transferred him to federal custody.  (Dkt. No. 24, ¶¶ 37-38).  Petitioner's current projected release date is December 4, 2024.[4]  (Dkt. No. 24, ¶ 4).

---

[4] At some point, the BOP credited the time from Yancey's detention between November 15, 2008, and July 7, 2009, toward his federal sentence.  The BOP later revoked this time credit, arguing, as explained below, that Yancey was not eligible to receive it.  (Dkt. No. 24-1, Declaration of Stacy Fanello, ¶ 24).

On October 8, 2021, Petitioner challenged the BOP's calculation of his sentence by submitting an administrative complaint to Respondent. (Dkt. No. 24, ¶ 10). Petitioner argued that he entered primary federal custody on January 5, 2009, and, therefore, the BOP should have granted him pre-sentence custody credit from that date. (Dkt. No. 1, Yancey's Petition, ¶¶ 25-28).

The BOP interpreted Petitioner's argument as an assertion that his federal sentencing judge intended to retroactively designate his sentence as concurrent with his state sentence *nunc pro tunc*. (Dkt. No. 23, p. 10). The BOP asked the federal sentencing court whether it was the intention of the judge, who had since passed away, to impose a sentence that retroactively designated Petitioner's time in a state institution as counting toward his federal sentence. (*Id.*). The sentencing court declined to make a determination, declaring instead it would "defer to BOP to use its best judgment in this matter." (Dkt. No. 24, ¶ 35). The BOP subsequently decided that "a retroactive designation was not appropriate" and affirmed the current calculation of Petitioner's sentence. (Dkt. No. 24-2, Respondent's Attached Exhibits, p. 70).

Once the warden denied Petitioner's administrative request, Petitioner appealed to the BOP's regional office on November 9, 2021. (Dkt. No. 24, ¶ 12). The regional office denied the appeal the next day. (*Id.*). Following BOP protocol, Petitioner further

appealed to the BOP's Office of General Counsel (OGC) on February 2, 2022.  (Dkt. No. 24, ¶ 13).   The OGC rejected Petitioner's appeal because Petitioner failed to include documentation of his intermediate appeal and failed to submit his OGC appeal within thirty days of the regional office's response.  (Dkt. No. 24, ¶ 14).   The OGC notified Petitioner he could refile his OGC appeal if he verified that the untimely filing was not his fault.  (Dkt. No. 24, ¶ 15).   Petitioner never refiled an appeal.  (*Id.*).

### 2. Procedural History

Petitioner initiated this action on October 20, 2022.  (Dkt. No. 1).   On August 21, 2023, Respondent filed the instant motion for summary judgment, asserting that Petitioner failed to exhaust administrative remedies and that his sentence was calculated correctly in any event.  (Dkt. Nos. 22; 23, Respondent's Memorandum Supporting Motion for Summary Judgment, pp. 1-2, 6-11).

In opposing, Petitioner argued that Respondent had waived the exhaustion argument, but he did not address the argument that his sentence had been calculated correctly.  (Dkt. No. 30).

The court subsequently ordered Respondent to respond to Petitioner's waiver arguments and ordered Petitioner to address Respondent's motion on the merits, along with a supplemental statement of facts.  Both parties complied.  (Dkt. Nos. 32; 35-38).

III. __THE PETITION__

The petition asserts two grounds for relief.  Paraphrasing:

Ground One asserts that the BOP erred in deeming Petitioner's federal sentence in Yancey I to begin running as of November 18, 2010, the date Mississippi officials released Petitioner to federal custody, rather than the date of Petitioner's sentencing, which occurred more than a year earlier on July 8, 2009. Petitioner also contends that the BOP failed to credit him for time spent in presentence custody on Yancey I.[5]

Ground Two asserts that even if Petitioner was not in primary federal custody as of January 5, 2009, the date he was brought into federal custody on Yancey I, he is entitled to receive "Willis" credit for time she spent in custody between his arrest on state charges on November 15, 2008, and his sentencing in Yancey I on July 7, 2009.[6]

---

[5] Petitioner identifies two distinct periods of presentence custody that allegedly should have been credited towards his federal sentence, including November 5–7, 2008, and November 15, 2008 – July 7, 2009. Petitioner contends that he has been in "primary federal custody" since January 5, 2009, when he apparently had his initial appearance in Yancey I, but he does not articulate why any time in custody before that date, apparently all in connection with unrelated state charges, also should be credited.  As noted above, the BOP initially credited the time from Petitioner's detention between November 15, 2008, and July 7, 2009, toward his federal sentence, but later revoked this credit after determining Petitioner was not eligible for it.

[6] The term "Willis" credit, discussed in more detail below, refers to a mechanism by which an individual who is serving concurrent state and federal sentences can have the time he spends in state custody also counted toward his federal sentence.

IV.  <u>**LEGAL STANDARD**</u>

1.  **Summary Judgment**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Carter v. Grondolsky*, Civil Action No. 12-11426-RWZ, 2014 U.S. Dist. LEXIS 178303, at *10 (D. Mass. December 30, 2014) (applying Fed. R. Civ. P. 56 to § 2241 petition). When viewing the factual record, the court draws all reasonable inferences in favor of the nonmovant; however, the court need not credit "conclusory allegations, improbable inferences, and unsupported speculation." *Lahens v. AT&T Mobility Puerto Rico, Inc.*, 28 F.4th 325, 333 (1st Cir. 2022); *see also Velazquez-Ortiz v. Vilsack*, 657 F.3d 64, 66 (1st Cir. 2011) ("We recite the facts, *as supported by the record*, in the light most favorable to [nonmovant], and draw all reasonable inferences in her favor.") (emphasis added).

Where, as here, the nonmovant bears the ultimate burden of proof in the case, summary judgment is appropriate if the nonmovant "fails 'to make a sufficient showing on an essential element of [their] case.'" *Katz v. Belveron Real Est. Partners, LLC*, 28 F.4th 300, 307 (1st Cir. 2022) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); *see Griggs-Ryan v. Smith*, 904 F.2d 112, 113 (1st Cir. 1990) ("After all, one who opposes a Rule 56 motion may not rest upon her laurels or her pleadings."). "Evidence which is

merely colorable, or is not significantly probative will not preclude summary judgment." *Griggs-Ryan*, 904 F.2d at 113.

### 2.   Challenges to BOP Decisions on Awarding Credit

The BOP has exclusive authority to calculate federal sentences, including any decisions about awarding credit. *United States v. Wilson*, 503 U.S. 329, 333 (1992) (finding "that it is the Attorney General who computes the amount of the credit after the defendant begins his sentence"); 28 C.F.R. § 0.96 (delegating to the BOP "any of the authority, functions, or duties conferred or imposed upon the Attorney General by any law relating to the commitment, control, or treatment of persons . . . convicted of offenses against the United States"). "Judicial review of the BOP's decision to grant [or deny] a *nunc pro tunc* designation of a state facility for service of a federal sentence is limited to abuse of discretion." *Ysabel v. Sabol*, 645 F. Supp. 2d 37, 39 (D. Mass. 2009); *see also Espinoza v. Sabol*, 558 F.3d 83, 91 (1st Cir. 2009) (noting that "[m]ost circuits consider that the district court's review of a BOP decision about credits is for abuse of discretion" but declining to decide standard in the First Circuit); *United States v. White*, 91 F. App'x 162, 163 (1st Cir. 2004) (per curiam) ("It is settled law that under 18 U.S.C. § 3585(b), discretion to credit time served is vested in the Attorney General[] through the Bureau of Prisons.").

V.      **DISCUSSION**

1.   **Effect of Respondent's Failure to File an Answer**

As a threshold matter, the court must consider the legal significance, if any, of Respondent's failure to formally file an answer to the petition.  As noted, Respondent responded to the petition by filing a motion to dismiss followed by the instant motion for summary judgment following the first motion's denial. This potentially matters because Respondent argues that Petitioner has not fully exhausted administrative remedies, *see e.g., Rogers v. United States*, 180 F.3d 349, 357 (1st Cir. 1999), and Petitioner argues that Respondent has waived this affirmative defense where she failed to file an answer.  Petitioner notes that under the Federal Rules of Civil Procedure, a party that files an answer ordinarily waives any affirmative defense that is not stated in its answer, Fed. R. Civ. P. 8(c)(1), and similarly is deemed to admit any allegation that is not specifically denied.  Fed. R. Civ. P. 8(c)(1) and (b)(6).  Seeking to import the force of those rules here, Petitioner argues that Respondent, by not formally filing an answer, should be deemed to have waived any potential affirmative defense and admitted to all of Petitioner's allegations.

Petitioner has not directed the court to any authority holding that a section 2241 respondent necessarily waives all affirmative defenses or admits to all allegations in a petition where she files

a motion for judgment rather than an answer, no matter how meritorious the motion may be. The court for its part has also been unable to find any persuasive authority supporting this proposition.

The court ultimately need not resolve this question because it may at its discretion choose to apply the Rules Governing Section 2254 Cases ("2254 Rules") to other types of habeas petitions. Rule 1(b) of the Rules Governing Section 2254 Proceedings; *Mattingley v. Spaulding*, Civil Action No. 18-11569-ADB, 2018 U.S. Dist. LEXIS 170580, at *4 (D. Mass. October 3, 2018) (applying the rules governing Section 2254 habeas proceedings to a petition filed pursuant to Section 2241). When applied, the 2254 Rules take precedence over any inconsistent provisions in the Federal Rules of Civil Procedure. Rule 12 of the Rules Governing Section 2254 Proceedings.

Under the 2254 Rules, the respondent is not required to answer the petition unless a judge so orders. Rule 5(a) of the Rules Governing Section 2254 Proceedings. In that instance, a respondent's answer to a petition or motion for habeas relief "must address the allegations in the motion [or petition, . . .] must state whether the moving party has used any other federal remedies, . . . and whether the moving party received an evidentiary hearing." Rule 5(b) of the Rules Governing Section 2254 Proceedings. Choosing to apply these rules here, the court finds

that Respondent's motion for summary judgment, memorandum in support, and statement of material facts collectively satisfy these requirements.

First, the summary judgment motion and accompanying filings adequately notified Petitioner of Respondent's legal and factual arguments and clarified what remains disputed in this case. Petitioner has neither argued nor demonstrated that Respondent's submissions or lack of a traditional answer has in any way prejudiced him, especially where the court afforded Petitioner a second opportunity to respond to Respondent's summary judgment motion on the merits.

Second, Respondent's reply to Petitioner's first statement of material facts (Dkt. No. 36) is nearly identical to a traditional answer to the petition. Relying on the argument that Respondent had admitted everything in his petition, Petitioner's first statement of facts repeated the factual allegations in his petition verbatim, and Respondent's reply admits or denies each allegation paragraph by paragraph, (Dkt. Nos. 31; 36), which is exactly the response Petitioner would have received through a traditional answer, *see* Fed. R. Civ. P. 8(b)(3).

Per the foregoing, the court finds that Respondent's summary judgment filings complied with the requirements for an answer set forth in the 2254 Rules. The court thus turns to the merits of Respondent's motion.

### 2. Exhaustion

Before filing a § 2241 habeas petition seeking judicial review of a BOP sentence calculation, a would-be petitioner must first exhaust their available administrative remedies. *Rogers v. United States*, 180 F.3d 349, 357 (1st Cir. 1999) (affirming dismissal of petition based in part on petitioner's failure to exhaust administrative remedies); *see Nygren v. Boncher*, 578 F. Supp. 3d 146, 151 (D. Mass. 2021) (dismissing § 2241 petition for failure to exhaust). Proper exhaustion requires full compliance with the agency's internal procedures for seeking administrative relief. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). A petitioner's "failure to exhaust his administrative remedies requires the dismissal of his [p]etition." *Nygren*, 578 F. Supp. 3d at 151.

The BOP's internal procedures for administrative relief are set out in 28 C.F.R. §§ 542.10 et seq. They provide that an inmate normally must "first present an issue of concern informally to staff . . . before [he] submits a Request for Administrative Remedy," 28 C.F.R. § 542.13(a), although this requirement can be waived in individual cases, *id.* at § 542.13(b). Following an unsuccessful attempt at an informal resolution, an inmate may initiate the formal relief process by submitting a request to the warden of the institution where he is incarcerated within 20 days of the occurrence that is the basis for the request. 28 C.F.R. § 542.14. "An inmate who is not satisfied with the Warden's response

[to the initial formal request] may submit an Appeal on the appropriate form (BP-10) to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response." 28 C.F.R. § 542.15(a). "An inmate who is not satisfied with the Regional Director's response [to this first appeal] may submit a [further appeal] on the appropriate form (BP-11) to the General Counsel within 30 calendar days of the date the Regional Director signed the response." *Id.* At each appeal level, the inmate's appeal must be accompanied by a complete copy of the response from the official at the previous stage. *Id.* at § 542.15(b)(1).

Respondent asserts, and Petitioner does not dispute, that Petitioner's appeal to the BOP's Office of General Counsel was deficient because he submitted it more than 30 days after receiving a response from the Regional Director and failed to include a copy of the Regional Director's response. Petitioner's failure to fully comply with the BOP's procedures means that he has not exhausted his administrative remedies as to either of his claimed grounds for relief. *See Woodford*, 548 U.S. at 90.

As such, Petitioner's failure to exhaust is sufficient grounds to enter judgment for Respondent. *See Nygren*, 578 F. Supp. 3d at 151. In the interests of thoroughness and efficiency, however, and appreciating that requiring Petitioner at this juncture to resume and exhaust his remedies could conceivably

extend the resolution of this issue beyond his scheduled release date and effectively deprive him of the opportunity to have his claims squarely addressed, the court goes on to consider Petitioner's claims on the merits. *C.f. Darling v. Boncher*, 651 F. Supp. 3d 433, 436 (D. Mass. 2023) (court "may skip over the exhaustion issue if it is easier to deny . . . the petition on the merits") (internal quotation marks omitted).

### 3. Merits of Petitioner's Claims

a. *The BOP's Role in Sentence Calculations*

The Attorney General of the United States, acting through the Bureau of Prisons, is the entity responsible for federal sentence computations. *Wilson*, 503 U.S. at 332-35. It is therefore up to the BOP, and not the sentencing court, to apply time credits toward a sentence calculation. *Id.* at 333-34.

This does not change when a state sentence is involved. The determination by a state court that a state sentence should run concurrently with a federal sentence is not binding on the BOP when calculating an individual's federal sentence. *Rodriguez-Rosa v. Spaulding*, Civil Action No. 19-11984-MBB, 2020 U.S. Dist. LEXIS 88044, at *33-35 (D. Mass. May, 19 2020); *see also Mejia v. Grondolsky*, Civil Action No. 12-1263, 2013 U.S. App. LEXIS 26665, at *1 (1st Cir. July 1, 2013) ("Even though the state court intended its sentence to run concurrently with appellant's federal sentence, 'the Bureau [of Prisons] is not bound in any way by [a]

state court's direction that the state and federal sentences run concurrently.'") (quoting *Barden v. Keohane*, 921 F.2d 476, 478 (3d Cir. 1990)).   Accordingly, while the state court apparently intended Petitioner's state sentence to be concurrent with his federal sentence, this decision does not impact the BOP's calculation.[7]   Rather, the BOP's determination will control Petitioner's sentence absent an abuse of discretion.

    b.   *Ground One*

Petitioner avers that the BOP erred when it failed to commence his sentence on July 8, 2009, the day the federal court sentenced him in connection with Yancey I, and failed to grant him credit for pre-sentence custody from November 5, 2008, to November 7, 2008, and from November 15, 2008, to July 7, 2009. (Dkt. No. 1, ¶ 27).   This argument is based on Petitioner's contention that he came into primary federal custody on or about January 5, 2009.

Although Petitioner advanced this claim in his petition, he failed to address it in his supplemental brief addressing Respondent's arguments on the merits.   This omission would appear to be deliberate where Petitioner's supplemental brief did address

---

[7] This court is not convinced in any case that the Mississippi state court would support the result that Petitioner seeks here.  In its order granting a motion for reconsideration and suspending the majority of Petitioner's state sentence, the state court expressly noted that it was amending Petitioner's sentence "[b]ased upon the convictions of the defendant in the US District Court in which those sentences have been designated by the federal authorities to be served consecutively with these [state] causes."  (Dkt. No. 24-2, p. 34).  Thus, the state court already accounted for the time Petitioner would spend serving his federal sentence in deciding to suspend his state sentence.

Ground Two on the merits.  The Petitioner has therefore waived Ground One.  *See Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252, 260 (1st Cir. 1999) ("The district court is free to disregard arguments that are not adequately developed."); *Miller v. Marchilli*, Civil Action No. 17-10469-DJC, 2019 WL 145559, at *6 (D. Mass. Jan. 9, 2019) (finding ground waived where it was present in petition but absent from memorandum in support of petition); *Blake v. Medeiros*, Civil Action No. 14-11845-IT, 2017 WL 4076104, at *4 (D. Mass. Sept. 14, 2017) (finding two claims waived because they were not raised in petitioner's memorandum); *see also Town of Milton v. FAA*, 87 F.4th 91, 99 (1st Cir. 2023) (deeming argument waived because it was not raised "in a timely and complete manner").

Even if not waived, Petitioner's claim fails if reached on the merits.  "A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served."  18 U.S.C. § 3585(a); *Bazzle v. Spaulding*, 460 F. Supp. 3d 74, 76 (D. Mass. 2020) ("A federal sentence commences on the date the defendant is received into federal custody awaiting transportation[] or arrives in federal custody voluntarily."). The earliest a sentence can commence is when the court imposes the sentence.  *Capaldo v. Winn*, Civil Action No. 03-40204-PBS, 2004

U.S. Dist. LEXIS 12325, at *8 (D. Mass. April 27, 2004).  While a sentence could begin as early as its imposition, the sentence only begins once the federal government receives the individual into its custody to transfer him to the official detention center where he will serve his sentence.

Petitioner asserts that he entered primary federal custody on January 5, 2009, and thus was in federal custody and awaiting transportation on July 8, 2009, when he was sentenced for his conduct in Yancey I.  Consequently, according to Petitioner, his federal sentence commenced at the time of his sentencing. Respondent asserts that Mississippi retained primary custody of Petitioner in 2009, only turning him over to federal authorities temporarily, and so Petitioner's sentence did not commence until November 2010.  The only evidence in the record on this point supports the Respondent.

"The sovereign which first arrests a defendant has primary jurisdiction over him." *Jimenez v. Warden*, 147 F. Supp. 2d 24, 28 (D. Mass. 2001).  After his brief initial detention from November 5 to November 7, Mississippi state officials rearrested Petitioner on November 15, 2008. (Dkt. No. 24, ¶¶ 16-17).  Mississippi was therefore the sovereign to initially arrest Petitioner, and thus had primary jurisdiction over him as of November 15, 2008, the date of his second arrest.

Petitioner does not dispute this conclusion.  Instead, he argues that Mississippi relinquished primary jurisdiction over him to the federal government on or about January 5, 2009.  "Primary jurisdiction remains vested in the sovereign that first arrested the defendant until that jurisdiction relinquishes its priority by[,] inter alia[,] bail release, dismissal of the pending charges, parole release, or expiration of the sentence."  *Jimenez*, 147 F. Supp. 2d at 28.  Although Petitioner alleges that Mississippi relinquished its primary jurisdiction over him, he is unable to identify any action the state took to effect that relinquishment (with one potential exception discussed below).

Petitioner asserts that, in the alternative to transferring him directly into primary federal custody, Mississippi released him on bond in MS Case II, at which point the federal government took him into custody.  (Dkt. No. 1, ¶ 8).  However, he does not cite to any evidence in the record to support the notion that he was released on bond.  In contrast, Respondent presents documentation showing that the state court never released Petitioner on bond in MS Case II.  (Dkt. No. 24-2, p. 50).[8]  Thus,

---

[8] Petitioner asserts that his presentence report in Yancey II stated that, "as of December 1, 2009, [he] was 'serving a federal sentence' and 'currently in the custody of the State of Mississippi via a Writ of Ad Prosequendum.'"  (Dkt. No. 1, ¶ 16).  If Mississippi issued a writ of habeas corpus ad prosequendum to effectively borrow Yancey from federal custody, this would suggest that Mississippi understood at the time that the federal government had primary custody over Yancey.  However, Petitioner has not filed a copy of this presentence report or any other evidence that Mississippi did issue a writ of habeas corpus ad prosequendum for him in or around December 2009, and so the court does not credit this assertion.  *See Lahens*, 28 F.4th at 333.

the only conclusion supported by the record is that Mississippi did not release Petitioner on bond on January 5, 2009, or otherwise relinquish control over him, meaning that Mississippi retained primary custody of Petitioner through the completion of his state sentence.  That being the case, Petitioner's federal sentence could not have commenced until Mississippi turned him over permanently to federal custody on November 18, 2010.  It follows that the BOP did not err in running Petitioner's sentence from that date.

   c.   *Ground Two*

Petitioner argues the BOP must restore the Willis credit it previously granted him for his time in custody from November 15, 2008, to July 7, 2009, and which the BOP revoked on September 30, 2021.  Respondent argues Petitioner was never eligible for this credit and that the BOP properly revoked it after determining Petitioner's ineligibility.

An individual is eligible for Willis credit from the BOP when: "(1) his federal and state sentences are concurrent; and (2) his federal sentence is to run longer than the state sentence (not counting any credits)."  *Dixon v. Beckstrom*, Civil Action No. 11-CV-0079-HRW, 2011 U.S. Dist. LEXIS 91468, at *3-4 n.2 (E.D. Ky. Aug. 16, 2011) (citing BOP Program Statement ('PS') 5880.28, *Sentence Computation Manual*); *see also Warden, FMC Devens*, --- F. Supp. 3d ---, 2023 WL 4409852, at *1-*2 (D. Mass. 2023) (citing *Tacetta v. Fed. Bureau of Prisons*, 606 F. App'x. 661, 664 (3d Cir.

2015)).[9]  Significantly, "Willis time credits may only be awarded to prisoners whose federal and state sentences run concurrently, not consecutively . . ." *Cruz v. Wilson*, No. 11-5471, 2012 U.S. App. LEXIS 13613, at *4 (6th Cir. Apr. 26, 2012).

When calculating a federal sentence, "[t]he BOP must decide (1) when the sentence commences and (2) to what extent the defendant in question may receive credit for any time already spent in custody." *Sweat v. Grondolsky*, 898 F. Supp. 2d 347, 351 (D. Mass. 2012).  Due to the concurrency requirement for Willis credit eligibility, establishing when the federal sentence began is vital.  Willis credits are only proper when the individual has begun serving one sentence before another sentence has ended.

---

[9] Willis credits arose when courts read 18 U.S.C. § 3568, the precursor to 18 U.S.C. § 3585, to permit individuals to receive time credits for a federal sentence even though the government credited the same time toward another sentence. *Willis v. United States*, 438 F.2d 923, 925 (5th Cir. 1971).  In 1984, Congress abrogated 18 U.S.C. § 3568 and replaced it with 18 U.S.C. § 3585 as part of the Comprehensive Crime Control Act of 1984. *Easterbrook v. Clay*, Case No. 2:16-cv-00736-KOB-HNJ, 2017 U.S. Dist. LEXIS 166101, at *8 (N.D. Ala. Aug. 30, 2017).  Congress later amended § 3585 to explicitly state a prohibition on crediting the same time in detention toward more than one sentence. *Id.*  While not formally declaring Willis credits statutorily superseded, several courts have opined that Willis credits are seemingly contrary to the plain language of § 3585's ban on double crediting. *Elwell v. Fisher*, 716 F.3d 477, 485 (8th Cir. 2013) ("[Petitioner's] arguments under Willis . . . cannot be reconciled with the statutory prohibition on double crediting."); *see also Moya v. Leu*, Case No. 1:21-cv-9362022, U.S. Dist. LEXIS 190890, at *9-10 (W.D. Mich. Oct. 19, 2022) ("While § 3585(b) does not provide any exceptions to the bar on double credit, the BOP has recognized instances where exceptions are warranted."); *Hall v. Stewart*, Civil Action No. 16-9105(RMB), 2018 U.S. Dist. LEXIS 138497, at *8 (D.N.J. Aug. 16, 2018) ("It appears that the Willis exception is no longer applicable.").  The First Circuit has not weighed in on whether Willis credits have survived the enactment of 18 U.S.C. § 3585; however, the Supreme Court has held § 3585 "made clear that a defendant could not receive a double credit for his detention time." *United States v. Wilson*, 503 U.S. 329, 337. Ultimately, this court does not need to take up the question of whether Willis credits remain valid because Petitioner is not entitled to credit in any case.

*Castro v. Sniezek*, 437 F. App'x 70, 73 (3rd Cir. 2011) (when state sentence concludes before federal sentence commences, the sentences are not concurrent and individual therefore becomes ineligible for Willis credit); *Mills v. Quintana*, 408 F. App'x. 533, 536 (3rd Cir. 2010) (finding petitioner was ineligible for Willis credit "because his non-federal sentence expired before his federal sentence commenced").

As discussed above in detail, Petitioner's federal sentence commenced on November 18, 2010, when he entered primary federal custody. By that point, Petitioner had already finished serving his state sentence.[10] Petitioner therefore never served his state and federal sentences concurrently, and so he is not eligible for Willis credit.

Notwithstanding this timing issue, Petitioner argues he is eligible for Willis credits because his federal sentence should have been retroactively deemed concurrent with his state sentence. He argues the BOP should not have relied on 18 U.S.C. § 3584(a), which creates a presumption of consecutiveness whenever a court imposes multiple sentences at different times, in denying his request for a *nunc pro tunc* designation. (Dkt. No. 37, p. 5).

---

[10] As detailed above, on November 17, 2010, the state court ordered that the remaining 12-year balance of Petitioner's state sentence be suspended. Petitioner does not argue that, because his sentence was suspended and not commuted or otherwise resolved, he was still serving the sentence on or after November 18, 2010, when his federal sentence began. Any such argument is therefore waived. *See Higgins*, 194 F.3d at 260.

As related above, the BOP asked Petitioner's federal sentencing court whether the court intended to impose such a retroactive *nunc pro tunc* designation. (Dkt. No. 24, ¶ 34). Such a designation would mean Petitioner's time in state custody would concurrently count as part of his federal sentence. *Dixon v. Beckstrom*, Civil Action No. 11-CV-0079-HRW, 2011 U.S. Dist. LEXIS 91468, at *17 (E.D. Ky. Aug. 16, 2011) ("A *nunc pro tunc* designation allows a prisoner's concurrent federal sentence to commence while he is still in state custody serving a state sentence."); *see also* 18 U.S.C. § 3621(b). The federal judge who sentenced Petitioner was unavailable; however, another judge of the sentencing court responded to the BOP and said he would "defer to the BOP to use its best judgment in this matter." (Dkt. No. 24, ¶ 35). The BOP then decided against a *nunc pro tunc* designation, thereby affirming Petitioner's current sentence calculation. (Dkt. No. 24, ¶ 36).

Petitioner argues the § 3584(a) presumption of consecutiveness should not apply. Even assuming *arguendo* that he is correct, the purported inapplicability of this statutory presumption does not mean the BOP abused its discretion when it determined that Petitioner's federal sentence should be consecutive to his state sentence. The BOP would still be within its discretion to determine Petitioner's sentences were consecutive apart from relying on this presumption.

The BOP's inherent responsibility to calculate federal sentences gives it wide authority in its sentence calculation decisions, which are only judicially reviewable under an abuse of discretion standard. *Ysabel*, 645 F. Supp. 2d at 39. Petitioner does not identify any action by the BOP that would constitute such an abuse. If anything, the BOP did more than necessary in this case by attempting to seek clarification from the federal sentencing court even though the sentencing judge was no longer available. *See Wilson*, 503 U.S. at 333-34 (determining prior custody credit is for the Attorney General in the first instance, not the district court); *see also Barden v. Keohane*, 921 F.2d 476, 483 (3rd Cir. 1990) ("While [§ 3621, which authorizes the BOP to recognize *nunc pro tunc* sentences] wisely requires the Bureau to solicit the views of the sentencing judge whenever possible, his decision is not controlling. . . ."). Given the BOP's effort to seek clarity and the sentencing court's reticence to weigh in, Petitioner fails to show how the BOP abused its discretion in deciding that a *nunc pro tunc* concurrency designation was unwarranted.

In short, Petitioner has not shown that the BOP abused its discretion in declining to give him Willis credit for the time he spent in state custody.

## VI.  <u>CONCLUSION</u>

For the foregoing reasons, Respondent's Motion for Summary Judgment is GRANTED and Petitioner's petition for a Writ of Habeas Corpus is DENIED.


<u>/s/ Donald L. Cabell</u>
DONALD L. CABELL, U.S.M.J.

DATED:  January 9, 2024